Yes, good morning. This case revolves around the issue of credibility and whether or not the evidence used to make an adverse credibility finding was significant and material in the inconsistencies, and I submit that it's not for several reasons. The information used comes from the petitioner's declaration attached to her application for asylum. There's evidence in the record that shows that counsel did not even show the petitioner the entire application or declaration prior to her stating on the record that everything in there was true and correct in how she wanted it to be. Well, whose fault is that? I mean, if she's asked, is everything there true and correct, and she says yes, isn't that supposed to be taken as answer? Yes. It may very well be if she was a fluent English speaker, somebody that's familiar with the system. She's a hard question. Is everything in your application true and correct? Yes. Now, if the answer should have been I haven't read it, I don't know, then the answer should have been I don't know. But she didn't say I don't know, did she? No, she agreed with the speaker in the courtroom, and then later on it's brought up by the attorney who says, no, I didn't show everything to her. I mean, so maybe she's saying... Well, sure, it's part of the recovery process, but why does the immigration judge have to believe the recovery process and not believe the initial testimony? Well, the initial testimony is believable. It's the declaration that puts into question that testimony that's the problem. The original testimony included that everything in the application or the declaration was true and correct. Why shouldn't the IJ believe that? At the time that it was said, the IJ had no reason to doubt any of the information contained in there until it was brought up later on by the attorney that only a portion of it was shown to the applicant. Which comes back to the first question, whose responsibility is this? When she says the information is true and correct, isn't it her obligation, if she doesn't know whether it's true and correct, to give that answer? And that's not the answer she gave. She said it is true and correct. But what if she's saying it's true and correct to the only information that she had seen and was unaware of other information contained in there that she had no idea of? Then the answer should be I don't know, or I haven't seen it all, or I haven't read it recently, or something else. But once she answers that question, yes, I'm not sure you're allowed a do-over. Well, I didn't mean yes. I meant yes, maybe, or yes, only if it doesn't hurt me. Yeah, I believe that the judge should be able to rely on that answer of yes until facts are brought up later on, pull into question the reliability of that answer. I have some questions regarding the scope of Ms. Begum's claim. In her asylum application, Ms. Begum states that the basis for her claim is that she suffered three rapes at the hands of Fijian soldiers. In contrast, her declaration mentions several events beyond being raped, including her father's detention and her parents' home being stoned. Is her claim premised on one or the other or both? I believe the main portion of her claim is based on the three rapes and the other incidental incidents relate to other family members, which I don't think are as important as the three major rapes, but do come into play with her fear of returning to Fiji. And I believe when she testifies to the main point, she's going to bet what she finds to cause her to fear, as opposed to those things that would cause other family members to fear returning to Fiji or to fear being in Fiji. But I also believe that you should also look at the fact that this is a woman that's a victim of several rapes, and there's allegations made in there that she should know. I mean, that she should have reported sooner, but this is somebody that's undergone three traumatic incidences, whose memory may not be the best or may not be able to come to grips with the information that she needs to put in an asylum application or that she needs to convey to the authorities to get the relief that she's seeking. And I believe some deference should be made towards that to the state of the victim or to the state of Ms. Begum when she is reporting these claims. And not all memories are perfectly clear under such circumstances. So what do we do then, though still, I guess, with the inconsistency regarding the timing of her father's detention? Well, I mean, that could be, you can look at that as a fault of memory because of the other factors that play into her remembering of the different incidences. I mean, there were three different reportings, one with her father, one with her mother, and one made over the telephone. And I believe it would be easy for her to confuse those in her mind when she's testifying about these incidences. And I'd like to reserve any time for rebuttal. Okay. We'll hear from the government. May it please the Court. Linda Chang for the Attorney General. The Court should deny the instant petition for review because Ms. Begum has failed to demonstrate that the evidence compels a finding that she was credible. Ms. Begum has a history of attempting to circumvent immigration laws through deceit. She first entered in 1998 and overstayed her visa. She then entered into a sham marriage in 1999 and CIS denied her visa petition. Was any part of this relied upon by the IJ or the BIA? The agency did take into account that CIS denied her visa petition and her adjustment application in sustaining the large charge of fraud and willful misrepresentation. But the IJ didn't specifically rely on the sham marriage or the other incident you relied on? The IJ specifically relied on the sham marriage in regards to denying her voluntary departure. But not in terms of her adverse credibility? However, it appears that the IJ did take into account because he states that, overall, he doubted her credibility based on the circumstances of the case. And that would include everything that has happened to her procedurally. Well, if we determine, I guess, the heart of Ms. Begum's claim is fear for her personal safety and not fear of her family's safety, do these inconsistencies concerning her father really go to the heart of her claim? These inconsistencies pointed out by the agency do go to the heart of the claim because she has only spoken to three rapes in her testimony, and therefore the details surrounding these incidents are critical to her claim. When you say only three rapes, that seems like a fair number of rapes, and it seems like that might be more of the core and might go to the heart of her claim rather than these other comments regarding her family's safety. And if that's true, which I think there might be a compelling argument there, if that's true, aren't these inconsistencies regarding the father more peripheral? I don't mean to sound callous when I say only three rapes. It's just that's how she presented her testimony. If we only analyze those core incidents, we have nothing to really compare and discuss because she presented it in a factual vacuum in a way. The details that she gives surrounding these incidents are what we have to compare with each telling. Simply by saying it happened three times and being consistent in saying it happened three times does not make you credible. Well, but she gave a fair amount of detail with each of these rapes. Actually, the one significant inconsistency or vagueness of her response regarding her rapes involves the soldiers who allegedly committed these crimes. She cannot really describe them. She's not quite sure if they are the same in every instance. She describes their hair texture. She does. That seems like a pretty specific item to describe. I'm trying to figure out what would qualify in your assessment as sufficient detail beyond what she has reported. It's not my position to make that assessment. However, I.J. did say that she could not describe their uniform. She did not give any other descriptions regarding them except for the vagueness of the texture of their hair. There is no other identifying marker for them. Let me, Ms. Changa, ask maybe the same question Judge McGee is asking in a little bit different way because I'm interested in the same issue. One, this is a pre-Real ID Act case, right? It is. So that means the finding of lack of credibility has to be based on, according to our cases, a specific cogent region that goes to the heart of the claim, right? Now, the I.J. listed, I don't know, half a dozen or more reasons. Now, tell me what, in your view, government's view, is the strongest reason that goes to the heart of a claim that, you know, on which she was inconsistent. The agency here did not rely on a single reason. Instead, it just proposed or presented all these reasons. I say that the I.J. listed six or seven of them, but in your view, what's the strongest one? What are you saying? Even if they're all weak, it's sort of like a cumulative error type of analysis? In a sense, the aggregate of her inconsistencies do cast doubt on her full story because as her testimony hangs together, you see that it does not all ring true. Do we have a pre-real I.J. case on credibility that says, even though no single reason is strong enough to, you know, to merit casting the petitioner's claim as incredible, you can aggregate them in the aggregate they're sufficient? Is there a case on that? There is a case that states in Cower, when inconsistencies that weaken a claim for asylum are accompanied by other indications of dishonesty, such as a pattern of clear and pervasive inconsistency or contradiction, and adverse credibility determination may be supported by substantial evidence. And here, based on her history of first attempting to fraud the government through a sham marriage and then later reentering with the purpose of performing labor without certification and then also self-petitioning for adjustment but being denied that, finally resorting to asylum shows that she has a history of trying to deceive the government in finding relief. Let me go back regarding the events or description of each of the rapes that occur because it seems like she described the events leading up to each rape, the soldier's general appearance, including the hair, the conversations she had with them and the threats that they made against her or her children. And I'm just trying to figure out, you know, what greater level of specificity and detail would she have had to provide regarding her attackers in order to satisfy the IJ? The agency decisions do not say exactly what she lacked or what could have made her a more credible witness. It only points to the inconsistencies that it perceived. And if you go through the transcript, in eliciting testimony from her, she is not the most clear with her answers in describing these soldiers. At one point she can't really say what color uniforms they were wearing in regards to whether they were policemen or how they are distinguished between soldiers and policemen, what ethnicity they were. And these are just some of the things that came out in her testimony. Additionally, I wanted to point out in regards to her language skills. On her asylum application, actually, she checked the box that said that she is fluent in English. And at a master calendar hearing, she testified through an interpreter, because she did request one and received one, that she reads a little English as well. Let me go back to Judge Tashima's question. I realize you're not the agency and we rely only upon the reasons given by the agency, but you've obviously looked carefully at the reasons cited. What would you identify as the one we should start with, as the one that you think is most strongly supported or one that we can rely upon? What should we look at first? I think the inconsistency regarding the first rape and whether her father or her mother accompanied her to the police station is an important one to look at, because it kind of shows the unraveling of her story, as she later then tries to rehabilitate it by saying she went several times and therefore she mistook the time that her mother went, that her father went, that a phone call was made. However, she talks about the ransacking of her home, which is when her father was allegedly detained in her declaration. This was discussed, however, it wasn't discussed in her testimony. So as she tries to rehabilitate, the strings become unraveled and you see that there are more inconsistencies that come out as she tries to create a coherent story out of this. It seems to me that the immigration judge was somewhat hostile towards Ms. Begum during the hearing. He cut her off abruptly a couple times. Can we factor this into assessing the demeanor? I'm not sure if I read the transcript the same way. Well, I understand that. You might not have. But let me ask you, assuming I'm right, or assuming that someone could interpret it as the IJ being hostile, can we factor that into assessing demeanor? The demeanor of the immigration judge? No, the immigration judge had to make an assessment regarding her demeanor, correct? Correct. And I'm just wondering if that's weakened his assessment, you know, in terms of if that weakens the credibility finding that was made since he was basing it on her demeanor when it appears that he was, the immigration judge was somewhat, seems like somewhat hostile. I do not think that her behavior on the bench really affected her demeanor finding. And if it was the case that this behavior seemed problematic, it should have been incumbent on Petitioner to present a due process or a biased claim towards the immigration judge to the board instead of at this late phase possibly introducing that. Thank you. Thank you. Mr. Knutson. Yeah, I do believe that the details the judge relied on, that you can't really come to a cumulative effect like as when you're determining whether somebody's eligible for asylum, you take a series of events, accumulate them together to show how they have fear of returning or how that's a reasonable fear. I think it's just the opposite in this one, where these little minor inconsistencies can be explained. And, yes, I do believe that you should be able to factor in, if there's perceived hostility from the judge, how that would affect the respondent testifying before a judge because that does project onto the respondent while they're testifying. Particularly maybe on the demeanor factor. Now, demeanor is something we're supposed to give deference to because we're not watching what the I.J. watched. In this case, the description given by the I.J. behind his or her demeanor assessment was limited. What should we make of the demeanor assessment? You're not much impressed by it, I guess. Yes, that's correct. All I would say is I believe that the hostility towards a respondent would have an impact on demeanor while one is testifying. And then once placing that on, basically reading an effect that you put onto the respondent without making any sort of commentary on that sort of discredits the finding that that demeanor made her unreliable or any of her testimony unreliable. But you never made a claim that the I.J. was biased. No. Okay. Submit. Thank you. We thank both counsel for your argument. The case just argued is submitted. Okay. Thank you, Your Honor.
judges: Tashima, Clifton, Murguia